IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALEXSAM, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHEQUITY, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND CERTIFYING ORDER FOR INTERLOCUTORY APPEAL** <br><br> Case No. 2:19-cv-00445 <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

Plaintiff AlexSam, Inc., sued Defendant HealthEquity, Inc., for patent infringement. *See* Dkt. No. 2 ("Compl."). Defendant has moved to dismiss Plaintiff's action, arguing that the asserted claims are ineligible for patent protection under 35 U.S.C. § 101. *See* Dkt. No. 32 ("MTD"). For the following reasons, Defendant's motion is denied.

**I.**

Plaintiff owns U.S. Patent No. 6,000,608 (the "'608 Patent"), which was invented and assigned to Plaintiff by Mr. Robert Dorf. *See* Compl. ¶ 2.[1] Mr. Dorf filed the patent application in 1997, and the U.S. Patent and Trademark Office approved the '608 Patent in 1999. *See* Dkt. No. 2-1 ("'608 Patent") at 1. At the time of invention, people carried various cards, such as debit cards and loyalty cards, each of which generally performed only one function, *see id.* at 1:26–30; 2:66–3:6, and some of which required merchants and retailers to have separate or modified card

---

[1] The following facts are taken from the complaint and the '608 Patent. *See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

readers or other equipment, *see* Compl. ¶ 24. The prior art thus lacked "a card system which [could] serve a number of functions, thus allowing the consumer to have one card which may act as their card for financial transactions, long-distance telephone calls, loyalty information, and medical information." '608 Patent at 2:66–3:6.

The '608 patent purported to "solve[] the problems associated with prior art card systems by providing an improved multifunction card system." *Id.* at 3:9–11. This patent discloses "a multifunction card system which allows for the activation of prepaid phone cards and the use of Electronic Gift Certificate™ cards, loyalty cards, debit cards, and medical information cards" and "provides for the immediate linkage of these various functions." *Id.* at 4:14–20; *accord* Compl. ¶ 18. The patent's claims cover various specific combinations of these functions.

In this case, Plaintiff alleges that Defendant has infringed two of these claims. *See* Compl. ¶ 55. The first—Claim 32—recites:

32. A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.

'608 Patent at 15:65–16:11.

The second—Claim 33—is a dependent claim that recites:

33. The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

*Id.* at 16:12–14.

Defendant argues that these claims "are directed to [an] abstract concept" and "articulate nothing more than the abstract result of a multifunction card, accomplished by generic machinery and processes." MTD at 1. Defendant argues that the asserted claims are thus ineligible for protection under the Patent Act and that Plaintiff's infringement action must accordingly be dismissed. *See id.* at 23.

## II.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017) (cleaned up).

"At the Rule 12(b)(6) stage," the court can determine patent eligibility "only when there are no factual allegations that prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (cleaned up). "Plausible factual allegations" may thus "preclude dismissing a case [for patent ineligibility] where nothing on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *Id.*

## III.

Section 101 of the Patent Act defines patent-eligible subject matter to include "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. But "this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (cleaned up).

The Supreme Court has established a two-step inquiry "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 217–18. The court must first "determine whether the claims at issue are directed to [a] patent-ineligible concept." *Id.* at 217. If they are, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66, 78–79 (2012)).

### A.

The court must thus first "consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (cleaned up). The Federal Circuit has "described [this] inquiry 'as looking to the "focus" of the claims.'" *Id.* (citations omitted). "[T]he specification may help illuminate the true focus of a claim," by revealing "'the problem facing the inventor' as well as what the patent describes as the invention." *Id.* at 766–67. "[R]eliance on the specification," however, "must always yield to the claim language in identifying that focus." *Id.* at 766.

Although "the abstract ideas category embodies the longstanding rule that an idea of itself is not patentable," *Alice*, 573 U.S. at 218 (cleaned up), "[n]either the Supreme Court nor the Federal Circuit has ventured a single, comprehensive definition" of what constitutes an abstract idea, *Epic IP LLC v. Backblaze, Inc.*, 351 F.Supp.3d 733, 737 (D. Del. 2018) (Bryson, J., by designation) (citations omitted). Instead, the court must look to similar cases, *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016), and their guiding "principles" to determine whether claims are directed to an abstract idea, *Epic*, 351 F.Supp.3d at 737.

Having reviewed many similar cases, the court thinks that the claims at issue here present a "close call" at the first step of the *Alice* inquiry. *Cf. Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348–49 (Fed. Cir. 2016). On the one hand, the court believes that the claims at issue here are probably best characterized as being directed to "accessing databases to facilitate various kinds of transactions"—or, more specifically, accessing financial and medical databases to facilitate making payments, engaging in other financial transactions, and obtaining medical records. Notwithstanding the Federal Circuit's warning against "overly abstract[ing] claims," *Natural Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1350 (Fed. Cir. 2019); *cf. Alice*, 573 U.S. at 217, the court finds that viewing the focus of the claims at this level of generality is comparable to the approach taken by both the Supreme Court and the Federal Circuit in similar cases, *see, e.g.*, *Alice*, 573 U.S. at 213–14 & n.2, 219–21; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313–15 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1334–35, 1337–38 (Fed. Cir. 2017). If this is the correct level of generality, the claims at issue here are indeed directed toward an abstract idea. Accessing databases or other collections of records is an "undisputedly well-known" practice. *Content Extraction & Transmission LLC v. Wells Fargo*

*Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding that "humans have always" "collect[ed] data," "recogniz[ed] certain data within the collected data set," and "stor[ed] that recognized data in a memory"). And transacting—including in the specific ways facilitated by the claims here— is a "fundamental economic practice long prevalent in our system of commerce." *Alice*, 573 U.S. at 219–21 (finding that intermediated settlement is a fundamental economic practice); *see also Bilksi v. Kappos*, 561 U.S. 593, 611 (2010) (finding that hedging against risk is a fundamental economic practice).

On the other hand, the court believes that the claims at issue here could also be fairly characterized as directed to "*improving* the process for accessing databases to facilitate various kinds of transactions." After all, the specification describes the problem facing the inventor as the lack of "a card system which [could] serve a number of functions," and it describes the "present invention" as "an improved multifunction card system" that would "allow[] the consumer to have one card which may act as their card for financial transactions, long-distance telephone calls, loyalty information, and medical information." '608 Patent at 3:2–11; *see also id.* at 4:14–19. Far from contradicting this understanding, moreover, the claims at issue here appear to describe a specific, though partial, implementation of the solution to the problem described: encoding cards with banking identification information and placing a processing hub within the banking network so that a user can access financial and medical information with a single card using a single point-of-sale device. *See, e.g., id.* at 2:56–64 ("Presently, in order to obtain a patient's medical history, the patient or his or her doctor must request the appropriate files from the patient's previous doctor(s) . . . . [T]here is a need for [medical history] data to be instantly available to the patient, or the patient's doctor if the patient is incapacitated.").

If the claims here are properly characterized in the latter manner, they could be understood to be "directed to improvements to the functionality of a computer or network platform itself," rather than simply to "a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020); *but cf. Bascom*, 827 F.3d at 1349 (finding that "the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea" and "defer[ring] [the] consideration of the specific claim limitations' narrowing effect for step two").

Regardless, the court need not determine precisely what the asserted claims are directed to or whether they are directed to an abstract idea. *Cf. Bascom*, 827 F.3d at 1349. For as explained below, even if the claims here are directed toward an abstract idea, the court cannot find as a matter of law at this early stage of the litigation that the claims are ineligible for patent protection.[2]

**B.**

Turning to the second step of the *Alice* inquiry, the court must "search for an '"inventive concept"'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217–218 (quoting *Mayo*, 556 U.S. at 72–73). "Simply appending conventional steps, specified at a high level of generality," is "not enough to supply an inventive

---

[2] The court does, however, reject Plaintiff's argument that the claims' "combination of physical elements describes a machine that by its very nature cannot be 'abstract.'" Resp. 10–12 (cleaned up). This argument "is beside the point." *Alice*, 573 U.S. at 224. "[I]f that were the end of the § 101 inquiry, an applicant could claim any principal of the physical or social sciences by reciting a computer system configured to implement the relevant concept," "thereby eviscerating" the long-standing exceptions to Section 101. *Id.*

concept." *Id.* at 222 (cleaned up). Nor do claim elements or the combination of elements provide the necessary inventive concept if they "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom*, 827 F.3d at 1350 (quoting *Alice*, 573 U.S. at 225). But "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

"Whether a claim 'supplies an inventive concept that renders a claim "significantly more" than an abstract idea to which it is directed is a question of law' that may include underlying factual determinations." *ChargePoint*, 920 F.3d at 773 (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)). "For example, within the overall step two analysis, 'whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact' that 'must be proven by clear and convincing evidence.'" *Id.* (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)).

Viewing the claim elements separately, the court finds that each of the five elements of Claim 32—a processing hub, a transaction processor, two databases, a point-of-sale device, and a card encoded with a banking identification number—is simply conventional and does not amount to an inventive concept. Contrary to Plaintiff's repeated assertions, the processing hub is not an inventive concept. The language of the claim makes clear that the processing hub simply serves the highly generalized and wholly conventional function of receiving data and accessing databases. *See Two-Way Media*, 847 F.3d at 1338 ("To save a patent at step two, an inventive concept must be evident in the claims . . . as opposed to something purportedly described in the specification."). And even if it could trump the general way in which the processing hub is described in the claims, the specification states that "[t]he processing hub can be implemented

using *any* computer having acceptable processing and storage capacity" and then lists several hardware and software preferences. '608 Patent at 10:65–11:32. Even the specification thus treats the processing hub as a "conventional computer . . . operating according to [its] ordinary function[]" of processing information. *Two-Way Media*, 874 F.3d at 1339.

A transaction processor and databases are also conventional components. Indeed, the specification suggests that at the time of invention the transaction processor may have already existed as a "bank processor," '608 Patent at 5:4–8; the financial database almost certainly already existed as part of the banking infrastructure; and there is nothing in the claim or specification indicating that medical database could not already exist, *see, e.g.*, *id.* at 3:58–60 (generally describing a database with medical history records)—though even if it did not, there was nothing unconventional, even in 1997, about a database containing medical records. In addition, the point-of-sale device is certainly conventional given that the claims describe it as an "unmodified existing standard" point-of-sale device. *Id.* at 16:3–5.

Finally, at the time of invention, cards encoded with bank identification numbers approved by the American Banking Association for use in a banking network were commonplace. *See id.* at 4:36–61. While the claims refer to a "debit/medical services card," *id.* at 15:66, and Plaintiff alleges such cards "were not yet in existence," Compl. ¶ 47, nothing in the claim or specification suggests that these cards were anything more than a standard card encoded with a bank identification number. Certainly there is no indication that the cards themselves provided the necessary multifunctional technology—rather, it was the system, and in particular the processing hub, that enabled these cards to serve multiple purposes. Hence, at least with respect to Claim 32, the court finds that the encoded card was also conventional.

When considering the elements as "an ordered combination," however, the court cannot find as a matter of law that the claims reflect "conventional, routine, and well understood applications in the art." To be sure, the ordered combination of elements described by the claims may seem conventional today, but inventiveness is determined "at the time of the patent," *Berkheimer*, 881 F.3d at 1369—not a generation later. The court finds it plausible that, even if each element of the claims was itself conventional, the ordered combination and specific arrangement of these conventional pieces described by claims was "non-conventional and non-generic" at the time of invention. *Bascom*, 827 F.3d at 1350 (holding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces").

Indeed, the specification suggests, and complaint alleges facts supporting the reasonable inference, that this arrangement—which would enable consumers and retailers to use existing point-of-sales devices and the existing banking infrastructure not only to perform financial transactions but also to obtain medical information—was an elegant and innovative solution to a significant problem in the prior art. The specification describes "a need for a card system which can serve a number of functions, thus allowing the consumer to have one card which may act as their card for financial transactions . . . and medical information." '608 Patent at 3:2–6. As the specification elaborates,

> a person's medical history can be extremely important in assessing the propriety of certain medical procedures during a medical emergency. Presently, in order to obtain a patient's medical history, the patient or his or her doctor must request the appropriate files from the patient's previous doctor(s). It often takes a number of days to receive the requested information. In a medical emergency, this delay is often far too long. Thus, there is a need for patients to have control over their own medical history data. Further, there is a need for this data to be instantly available to the patient, or the patient's doctor if the patient is incapacitated.

10

*Id.* at 2:56–64. And Plaintiff alleges that "the combination of the POS device, transaction processor, and Processing Hub into a system that allows for the multifunction card system to access debit card databases and medical databases was not available or in general use in 1997." Compl. ¶ 38. Because the court must accept these facts as true, the court cannot find as a matter of law that the ordered combination of elements comprising Mr. Dorf's multifunction card system was conventional.

Essentially the same analysis applies to Claim 33, which recites the same elements but requires that "the unique identification number" encoded on the card "further comprises a medical identification number." '608 Patent at 16:12–14. It is possible that using a medical identification number that is also a bank identification number approved by the American Banking Association for use in a banking network is itself a nonconventional, innovative concept. The court need not decide this issue, however, given that it cannot say, as a matter of law, the claims at issue here do not comprise "an inventive concept . . . in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350

To be clear, the court does not mean to suggest that any new arrangement of conventional components will preclude a finding of patent ineligibility at the motion to dismiss stage under *Bascom*. In *ChargePoint*, for instance, the Federal Circuit found the asserted claims distinguishable from those in *Bascom* because they did "nothing to improve how charging stations function" but rather "merely add[ed] generic networking capabilities to those charging stations and [said] 'apply it.'" 920 F.3d at 774–75. Indeed, the specification there gave "no indication that the patented invention involved how to add network connectivity to [the] charging stations in an unconventional way." *Id.* at 775. But, as the record currently stands, the court cannot make an analogous finding here. Mr. Dorf's card system not only allowed a single card to

perform multiple functions, a capability that did not exist in the prior art, but it also replaced the need for separate means of accessing financial and medical information, *see* '608 Patent at 2:56–60; *accord* Compl. ¶ 41, thus making Mr. Dorf's solution "more viable to merchants and easier to integrate into the marketplace" than the prior art solutions, *see* Compl. ¶¶ 24, 32.

*   *   *

In short, accepting Plaintiff's well-pled factual allegations as true and in the light most favorable to Plaintiff, the court cannot find as a matter of law at this early stage of the proceedings that Claims 32 and 33 of the '608 patent are ineligible for protection under Section 101. The court recognizes that both stages of the *Alice* inquiry present close and difficult questions in this case and that its resolution of these questions is subject to reasonable dispute. Indeed, both parties have cited authoritative cases addressing at least somewhat analogous patent claims that appear to support their conflicting positions and, in all candor, this court finds some of these cases difficult to reconcile with one another.

If this court's ruling is erroneous, it would welcome reversal by the Federal Circuit. It is likely that such a ruling would promptly and efficiently resolve litigation not only in this case, but also in two other district courts where similar lawsuits and "nearly identical" motions to dismiss are pending. Dkt. No. 57. The court accordingly finds that this "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. Defendant may petition the United States Court of Appeals for leave to appeal this order.

**IT IS SO ORDERED.**

DATED this 7th day of August, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge